Case 75—INDICTMENT—January 22.

# Commonwealth v. Petty.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

CONSTITUTIONAL LAW—POWER OF STATE TO REGULATE SALE OF PATENT RIGHT.—The statute of this State which requires a patentee or his vendee or assignee to first procure and pay for a license before he is authorized to vend his patent right, or territory for the sa e of such right, is in violation of the Federal Constitution. While the States have jurisdiction to legislate on the matter of the use or sale of the article which is brought into existence by virtue of the application of the patented process, Congress alone has power to regulate the sale of the right of the inventor in his discovery and the manner of the disposition of such rights.

WM. J. HENDRICK, ATTORNEY-GENERAL, FOR APPELLANT.

Citations: Rash v. Farley, 91 Ky., 344; Rash v. Holloway, 82 Ky., 674; Commonwealth v. Jones, 7 Bush, 502; Spadone v. Reed, 7 Bush, 455; Brown v. Young, 2 B. M., 26; Bull v. Harragan, 17 B. M., 749.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

The grand jury of Christian county returned an indictment against the appellee, Ebenezer Petty, charging that he did unlawfully sell and offer for sale the

patent right to make and use a certain machine or contrivance called a post and pile driver, and did sell territory for the use, sale and manufacture of the post and pile driver without first having obtained a license as required by law, and that at the time he was an itinerant person selling and offering to sell the patent right and territory as stated. This indictment is under the statute which imposes a penalty on all itinerant persons who vend patent rights or territory for the sale, use or manufacture of patent rights, without procuring and paying for a license authorizing such sale. The law fixes the fee for the license that shall be paid.

The appeal is taken from a judgment of the court below sustaining a demurrer to and dismissing the indictment.

The sole question is as to the validity of the statute which requires a patentee or his vendee or assignee to first procure and pay for a license before he is authorized to vend his patent right, or territory for the sale, use or manufacture of his patent right.

This statute in effect declares unlawful the sale of any patent right, or the sale of any part of the territory which is covered by such patent right, to any one unless the vendor first procure from the officials as provided in the statute a license authorizing the sale. The eighth clause of section 8, article 8, of the Constitution of the United States, confers authority upon Congress "to promote the progress of science and useful arts, by securing, for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries."

The power thus given to Congress has been exercised

by it since the organization of the government.  Statutes have been enacted relating to the subject, and the provisions thereof fully prescribe the circumstances and the manner of the issual of patents; how they may be transferred, and the character and extent of the rights which they confer on the patentee or his vendee or assignee.  The moment the patent is granted, the rights of the patentee are complete. Even his property rights can not be destroyed or impaired by Congress subsequently repealing the law which authorized the granting of it.  (McClurg v. Kingsland, 1 Howard, 206.)  A patent right is not a tangible property.  It is an incorporeal right.  The patent secures to the patentee the exclusive right in the discovery.

The Supreme Court, in the case of Patterson v. Kentucky, 97 U. S., 501, said: "The right of property in the physical substance which is the fruit of the discovery is altogether distinct from the right in the discovery itself, just as the property in the instruments or plate by which copies of a map are multiplied is distinct from the copyright of the map itself. Stephens v. Cady, 14 How., 528; Stevens v. Gladding, et al, 17 id., 447."

The incorporeal right, or the right in the discovery, Congress has full and complete authority to secure to the inventor and protect him in its enjoyment and against all interference.

Justice Field, in delivering the opinion of the Supreme Court of the United States in Webber v. Virginia, 103 U. S., 344, said: "It is only the right to the invention or discovery—the incorporeal right— which the State can not interfere with."

It is proper that this authority should be exercised that the efforts of genius may be rewarded, thus stimulating and encouraging the production of useful inventions. When the property is brought into existence by the application of the discovery and is brought into or produced in the State, the use of it is not beyond the control of its legislation. The question as to the use of property thus produced is not involved here.

In Gayler v. Wilder, 10 How., 494, Taney, C. J., said : "The monopoly granted to the patentee is for one entire thing. It is the exclusive right of making, using, and vending to others to be used, the improvement he has invented, and for which the patent is granted. The monopoly did not exist at common law, and the right, therefore, which may be exercised under it can not be regulated by rules of the common law. It is created by the act of Congress."

In Illinois, a statute requires vendors of patent rights to procure a certificate from the county clerk, and provides further that every note given for a patent right should contain the words, "given for a patent right," and that such obligation should be subject to all defenses as if owned by the payee.

The Supreme Court of Illinois, in the case of Hollida v. Hunt (70 Ill., 109), 22 American Reports, 63, held that the law was unconstitutional, because it was an attempt to regulate and control, by enactments of the Legislature of Illinois, a matter of which Congress had sole jurisdiction. Part of the Illinois statute was similar to the one in question. It was an effort to regulate or control the sale of a patent right by first requiring a permission from the county clerk.

In Cranson v. Smith (37 Mich., 309), 26 American Reports, 516, the Supreme Court of Michigan decided that a statute of that State requiring obligations given for patent rights to contain the words "given for a patent right," and making them subject to defenses in the hand of innocent holders, the same as in the hand of the original payee, was an unconstitutional interference with the prerogative of congress and void. The court said: "When any right or privilege is subject to the regulation of Congress it is not competent for State laws to impose any conditions which shall interfere with the rights or diminish their value. In those cases where the congressional power is lawfully exercised, it is supreme."

Patterson v. Commonwealth, 11 Bush, 311, arose under a statute prohibiting the sale within the State of all illuminating oils which did not ignite at a certain named temperature, and imposing a fine for its violation. The same act imposed a penalty on all who should sell such fluids after they had been condemned by the State inspector, and the barrels or packages were branded by him "unsafe for illuminating purposes."

The defendant was selling an oil which had been condemned by the inspector. The court held that the legislation was within the jurisdiction of the State, and that when the article is made by reason of the application of the principle discovered, and is sold or attempted to be sold or used within the jurisdiction of the State, it is subject to its law the same as other property.

Judge Pryor, delivering the opinion of the court,. said :

"There is a manifest distinction between the right of property in the patent, which carries with it the power on the part of the patentee to assign it, and the right to sell the property resulting from the invention or patent.   A State has no power to say, through its Legislature, that the patentee shall not sell his patent, or that its use-shall be common to all of its citizens ; for this would· be in direct conflict with the law of Congress, and that portion of this opinion referred to giving the patentee an unrestricted power· to sell, has. allusion alone to his right of property in the patent right, as that was the only question involved in the case.    The discovery or invention is made property by reason of the patent, and this right of property the patentee can dispose of under the law of Congress, and no State legislation can deprive him of this right ; but wh n the fruits of the invention, or the article made by reason of the application of the principle discovered, is attempted to be sold or used within the jurisdiction of a State, it is subject to its. laws like other property, and such has been the uni-- form decision of all the courts, State and Federal, upon this question."

This opinion most clearly states the distinction between the right of property in the patent and the right in the article which has been produced by the application of the principle discovered.    Patterson v. Commonwealth, *supra*, was appealed to the Supreme Court of the United States, and that court approved the judgment.

National authority only can grant patents and regulate the sale of the right of the inventor in his discovery, and the manner of the disposition of such rights.

While the States have jurisdiction to legislate on the matter of the use or sale of the article which is brought into existence by virtue of the application of the patented process, it is an invasion of national authority for the Legislature of a State to make a law which requires the patentee or his vendee to first procure and pay for a license to sell his right in his discovery—his intangible right—or the territory in which such right is granted. In so far as the statute attempts this it is in conflict with the law of Congress. If the Legislature has authority to require the patentee or his assignees to procure and pay for this privilege, then there is no limit to the extent of such requirements. The Legislature could fix the license fee so high that the patentee could not afford to pay it, as it might exceed the commercial value of his right.

By this means the Legislature of a State could utterly destroy the power which is in Congress by the Federal Constitution "to promote the progress of science and useful arts." The right to protect the inventor is necessarily with the authority which constitutionally and lawfully granted such rights.

It was said by Marshall, C. J., in McCulloch v. The State of Maryland, 4 Wheat., 436:

"1st. That a power to create implies a power to preserve.

"2d. That a power to destroy, if wielded by a different hand, is hostile and incompatible with the power to create and preserve.

"3d. That when the repugnance exists, that authority which is supreme must control, not yield, to that over which it is supreme."

For the foregoing reasons the judgment is affirmed. Judge GRACE not sitting.